Thank you. Good morning, Your Honor, Counsel. May it please the Court, my name is Randy Kaye and I represent Millennium Laboratories, appellant in this matter. I will aim to reserve approximately three minutes for rebuttal. This case presents a de novo review of a summary judgment in favor of the defendant on the functionality element of a trade dress claim and then a Companion 17-200 unfair competition claim. Functionality in a trade dress claim is deemed by the Ninth Circuit as intensely factual and we are looking at it today in the context of summary judgment on a record replete with many facts, many material facts, many of which are in dispute, submitted by both sides in the District Court in the context of separate statements of material facts to which each responded to the other on whether they were disputed or not. Counsel, this is going to be perhaps an off-the-wall question for both of you, but I want to raise it. I'm puzzled about how this case gets to us on this sole issue because one of the requirements of a trade dress claim is likelihood of confusion and I have a very hard time seeing how any consumer could possibly be confused where you have a one-page chart with the name of the company prominently displayed at the top, so how is there possible confusion about source? And I guess the second half of the question is, is there a way that we are permitted to reach that issue on this appeal? Thank you, Judge Graber. To answer the second question, first I would submit the answer is no because Millennium had no notice and Millennium did not put into the record the evidence on the second or third elements of the trade dress claim. The motion was brought early in the case, solely on functionality, and Millennium solely responded to the functionality issue. I guess it just strikes me as a really odd way to try the case, but I guess that's not our problem if we're not the ones trying it. I submit that that is correct that we are not able today to address likelihood of confusion or secondary meaning or any of the factors in the court to have presented its disputed facts on those issues. Interestingly, those issues do arise in the respondent's appellate brief, but they are immaterial to this appeal. Well, they're immaterial to the functionality analysis, but they are not immaterial to the claim, and so I guess maybe it's just my personal frustration that I have to live with. I understand. Counsel, Judge Gould, if I could interject a question. First of all, I shared Judge Graber's concern that it's not clear where the likelihood of confusion element on trade dress would come from, but as I understand what you've said in the record, there is not a sufficient record on that point for us to make any judgment about it. Normally, we could affirm on any ground supported by the record, but here the record does not support that there's no likelihood of confusion. It's just an open issue. Let me add, oh, I'm sorry. Go ahead. Go ahead, Judge Gould. Excuse me. Yes, Judge Gould, as a matter under Federal Rule of Civil Procedure 56 and under due process, Millennium was not notified to counter the second or third elements of the trade dress claim. OK. OK. So I'm working on that premise. And even though I have a little reservation as why our panel should have to write the Great American novel or great precedent on functionality, if that's not going to end up being the crux of the case. But let's go to that. I am. And this point is a it's a comment. It's a question and a comment. It's really on your side of the case. So I understand how in this industry with people testing drug results, that it's probably is or it may be functional that someone report that a report has a bell curve on results and has some linear data describing results. So the concept of giving that information may be functional, but I have difficulty seeing why the the layout of. Of the chart. Would be functional. That seems to me it could be could have trade dress elements. And so this is really on your side of the case. Don't don't we have a fact issue? Whether the layout of the chart putting bell curve and linear data side by side, whether whether that is functional. Certainly, as to the latter remark, it is a fact question on this factual record. And I would like to identify what we're talking about as the article under the Qualitex standard and what the claimed trade dress is, because the article is not the claimed trade dress here. The article under Qualitex is the medical drug test results. What is the concentration level of the prescribed drug in the patient? That output is a number. That's the article we are looking at. And then the question in the medical in the design in the report is what choices from a design perspective did Millennium make? And among bar chart, plot graph, bell curve, table, line graph, rather than display a number, Millennium chose a fanciful left side bell curve and rather than superimpose the historical on top of it, which might be the default or ordinary, let's look at the patient's history. Millennium displays it separately to the right with borders and with a square on the right historical chart, but a vertical line on the left bell chart rather than a diamond, an X, a circle, an oval, all the different ways one may depict visually what the number is, the number being the article. In what Qualitex and Trafix and in what labs dictate are a product feature is functional if it is essential to the use or purpose of the article. And none of these design elements are essential to the use of the number of the drug test, the drug test concentration level. That can be displayed in any of these ways, any combination of bell curve, bar graph, line graph, table, superimposed. Let's go back to what a pediatrician looks at from decades ago for display of growth chart. You have age on the bottom and you have height on the Y-axis and there's a line showing the mean, the 50 percentile, and then usually there's grayed out the one standard deviation and two standard deviations in a line graph. And then the pediatrician, as the patient goes from two years old to three years old, puts an X at the height. And you can see is he tracking at the 50 percentile or is he falling off the curve? And I submit that would be the default is a single graph of any type and you put an X to denote the current test result. Here Millennium came with a completely different view for doctors and I will address the early question about the likelihood of confusion. When Ameritox adopted a very, very similar look and feel to its design of the article, which was the test result, doctors who are the consumers here would identify that as a Millennium report because a Millennium became known. This is getting outside the core issue here, which is functionality and Qualitex. I would like to indicate also that the triumvirate of cases from the Supreme Court, which Inwood, Qualitex, and Trafix are consistent with the Ninth Circuit disc golf and click billiards and Fuddruckers cases. Something to reconcile these cases together is the question, is the trade dress a device like in disc golf or is it decor like in two pesos or in click billiards the pool hall decor or is it a publication format like here and like in the Tools USA, Computer Care, and Hartford House cases, which are Fourth, Seventh, and Tenth Circuit cases. But the way in which one looks at the trade dress under the Qualitex standard does depend in part on is it a device subject to a utility patent, in which case the utilitarianism is going to be a very different question versus a decor case versus a publication format because when you note that the article at issue here, the medical result number is different from the design choice, there's no way it can be said that the design choice is essential to the use of the article, which is the only question before this court ultimately. I would like to address some of the disputed facts on these records. Millennium came forward with 11 facts. It contended were disputed and material and in the excerpt of record pages 88 and 89, in particular of the 11, I would point to fact one, facts three through six, and fact nine, all of which are disputed by Ameritox and they get to what is even claimed as the design that's disputed on this record, and then there's all this evidence about Ameritox's internal records stating that Millennium's fanciful design is of extremely limited utility, inherently of little value, does not assist in understanding a patient's adherence, which is the issue, and that the Ameritox evidence also shows the bell curve is irrelevant to use of the reports. Yet the District Court rejected all of that evidence that favors Millennium and adopted the evidence from Ameritox at summary judgment on a motion by Ameritox, the exact opposite of what the District Court says in its introductory statement it's supposed to do. Let me ask this court question. Shouldn't the District Court have construed the evidence in the light and most favorable to the non-moving party, which means Millennium? Exactly. And when it didn't do that, doesn't that perhaps constitute error by the District Court? Judge Daniel, exactly, and that alone merits reversal. Counsel, I have another one of my off-the-wall questions in this case, and if you do not feel that it's appropriate to answer, you don't have to, but I wonder whether this is a case that might benefit from the mediation services of the court and whether you have any position on that question. My answer would be potentially. My client is here today, and I am glad to talk with him. The answer is I will do that and coordinate with Ameritox counsel on that question, and if both sides agree, we will notify the Ninth Circuit. Okay. Finally, I would like to mention this Moldex metric Ninth Circuit decision from 2015 earlier this year, where that court looked at a summary judgment in favor of a defendant on functionality. It is published in the Federal Appendix 596, Federal Appendix 567. Unpublished disposition. That is correct. You said 596 Federal Appendix? 567, where the Ninth Circuit states that not addressing essentiality when analyzing functionality, the district court erred. The Ninth Circuit panel discusses disc golf and says those factors are legitimate considerations, but a court cannot rigidly apply these factors and ignore Qualitex's focus on essentiality, which is exactly what the district court in this case did. Counsel, you have about a minute left if you'd like to reserve. Yes. Thank you. Mr. Miller? Thank you. May it please the court, my name is Eric Milner and I represent Ameritox. The district court correctly determined... Let me ask a question. I'm concerned here that the district court impermissibly narrowed the scope of what it should consider and really focused on the graphs as opposed to the body of work as a whole, and it did that in a situation where there's clear Ninth Circuit precedent that says normally functionality is something that's intensely factual. So I'm concerned that if you construe the evidence in the light most favorable to the non-moving party, the district court really didn't do that and didn't consider the broader context of what Millennium was urging and just focused on those graphs. And if there's merit to what I'm saying, doesn't that by necessity require reversal on functionality? That would, but with respect, Your Honor, I think that's not an accurate description of what the district court did. The district court recognized, and we agree, that the evidence has to be viewed in the light most favorable to the non-moving party. The district court recognized in its opinion, and we agree, that you have to look at all of the elements of the claimed trade dress as a whole. But what the district court said, and this is what the record shows, is that it's their burden, the plaintiff's burden, to prove non-functionality. This court has described that as a heavy burden. So they have the burden of coming up with some evidence that shows that all of these elements together have some non-functional purpose to them. Well, most of the tests from Disc Golf, it seems to me, aren't met. There certainly are alternative designs available, lots of them, and it's sort of an aesthetic choice. The third factor seems not to be met. There's advertising that says the graphs are useful, but, and maybe having them on the same page, so you don't have to put two pages next to each other, but there's nothing particular about side by side. There'd be zero cost involved. So I guess I have trouble seeing how the evidence viewed in the light most favorable to Millennium meets the test as a matter of law. Well, I think maybe it would help to step back for a moment and look at what the product is here, and I think it's important. Product is information. That's exactly right. And so why isn't this sort of just like Qualitex, where it's important to have the information. Qualitex says it's important to have a color, but there's nothing special about green. You could use maroon, you could use purple, you could use goldenrod. So why isn't it similar to that? It's important to have the information, but it's purely an aesthetic, not functional choice to have, you know, x on side left and y on side right. It's not purely an aesthetic choice. In the scientific and medical community, and these are reports for doctors, graphs are a standard way of presenting information, and the arrangement of the graphs, you know, it is not trade dress protectable to, you know, you can't protect by trade dress the idea of reading from left to right. That is a standard way of presenting information. The bell curve presents... Or top to bottom. I mean, I think that actually illustrates the problem here. I mean, if they get a monopoly on left to right, and then we get a monopoly on top to bottom, you know, that kind of exhausts the universe of possibilities in the market. What they have done is taken sort of functional elements, the bell curve, the plot and white display are the only way to distinguish different kinds of lines on a graph. They say that it's a minimalist presentation with little verbiage. I mean, that is what makes it a graph rather than a block of text. They say that there's a border around it, which is, you know, first of all, we don't even have, but secondly, a border is functional because it sets out the graph, separates them from the rest of the text. And the side by side presentation is simply a sort of obvious way of combining functional elements. And in that respect, it's very much like this court's decision in Leatherman and Seacolt, where you had devices that combined a bunch of functional elements. And the plaintiff said, well, look, with all these functional elements together, it has a particular appearance, and we want to protect that. And the court said, you can't do that because there's nothing non-functional about the combination of these elements. This would be a different case if they had used purple and green ink to draw their graph, or if instead of little squares on the plot, they had smiley faces or pictures of cats or something. But all of the elements that they have claimed are the basic elements of what defines a graph. And then the only evidence that they put in that there's anything non-functional about the way that these elements are combined is the declaration of Ms. Strickland, their employee, who said, quote, in my opinion, the following elements of Millennium's graphical format are aesthetic and non-functional. And then she enumerates the elements. That's it. And what the district court said, quite rightly, is that you can't survive summary judgment simply by putting in a declaration that says, in effect, I agree with the complaint, and recites in conclusory fashion the elements of the test. Well, wasn't there more, though, to what Jennifer Strickland said? The district court said, while her conclusion that these elements are non-functional is conclusory and thus not entitled to wait, it may be that the district court failed to consider the remainder of her discussion in the paragraph, which may not be conclusory. That paragraph, I think, must be read in conjunction with the previous one, paragraph 5, which the district court did not consider. And there it stated, quote, Millennium's graphical format provides not only a representation of data generated by Millennium's laboratory service, but also was selected and arranged in such a way as to provide a unique look and feel commensurate with Millennium's market image as a cutting-edge clinical laboratory. And that's in the record pages 66 and 67. And paragraph 6 then describes what about the presentation was the aesthetic portion. So it seems to me that the district courts, while it may have been correct about the conclusory comments, there were other portions of Strickland's declaration that I think the district court should have considered. And if district court had considered it, it would have suggested that perhaps a different result would have been the outcome. Your Honor, the sentence that you just quoted is about the only other sentence in the declaration that even arguably bears on this question. And I would submit that that too is essentially conclusory. And if that is enough, then it's very difficult to see how any case would ever be disposed of on summary judgment. Well, why is that bad? Well, there are certain cases that are quite hard to decide on summary judgment cases involving intent and other kinds of cases. That seems like an odd argument that if you can't have summary judgment, there's something wrong. That's the exception, not the rule. It's bad for two reasons. One, I mean, it is at odds with this court's cases, which have routinely said that these kinds of issues can be disposed of at summary judgment. Well, they can, but to say that it's quite difficult, it's sort of like... It's also contrary to the Supreme Court's teaching in Walmart. And what the court said there is that it is very important to protect free competition from the deterrent effect, not just of successful litigation, but even... Quite a different context. Well, I mean, that was with respect to the distinctiveness component of the trade dress analysis. This is functionality, but I think the principle is equally applicable. And what they're trying to do here is claim a monopoly on the idea of graphical presentation of quantitative medical information. And given what the statute imposes the burden on them, this court has described that as a heavy burden and simply putting in a declaration that says... In examining this, and there are so many ways you could display this information top to bottom, two different pages, more text, less text, different colors, different forms of graphing that all seem to me to be aesthetic choices and non-functional. With respect to... It's not aesthetic. It's not because it looks pretty. It's because it's a more I could address a couple of the points that you raised. The two different pages, there is evidence in the record, and this is page 177. One of their employees recognized that doctors wanted to be on one page because it's easier to look at the two things side by side. And I think when you look at what they point to as the evidence of alternatives, it actually illustrates the paucity of genuine alternatives here that they point to some possible arrangements at pages 54 to 57 of the excerpts of record. Those are... Counsel, I'm sorry. Well, I would say that those are four different graphs, two of which I think would infringe their description of the trade dress. One of which uses a bell curve to present a time series, which is a very unnatural way of presenting a series of different results. One of which uses a bar graph, which again is an unnatural way of presenting a time series of data. But the graphs that are used here are the most basic natural way of presenting that information. Does your client have a position on whether mediation through our circuit mediation office would be of assistance to the parties? I think my answer is the same as my friend on the other side. We'd be happy to discuss it our client and discuss with the other side. And yes, we would be willing to explore that. I got a different question for you. Under the aesthetic tests, do you think that there truly are genuine issues of material fact as to whether the composite elements of the report format as a whole would impose a significant non-reputation related competitive disadvantage? And what I mean by that here, in this case, and based on the record I've looked at, Millennium has presented evidence that its competitors, including Ameritox, would remain free to use the functional aspects of the design, including the graphs. They just could not use the overall design format, which is Millennium's trade dress. And so again, my concern is I think that the district court had blinders on and impermissibly narrowed what it considered. But if you consider more, then inevitably it seems to me there really are factual disputes regarding the aesthetic tests and whether or not the first prong of the test regarding functionality is non-functional or functional. I'm having trouble getting beyond that because, you know, I'm generally a trial judge. So I'm the one that makes decisions. And when I read this, I had a reaction that this judge didn't look at the record the right way. And I don't really care who wins or loses anything, but it seems to me that his result is flawed because of the way he impermissibly narrowed what he considered. I think that there are two answers to that, Your Honor. The first is we don't even need to get to the aesthetic test if it's functional under the basic Inwood definition. And I would add to what my friend quoted, the language from Inwood, essential to the use or purpose of the article, the Supreme Court went on to say, or if it affects the cost or quality of the article. And so this is something that affects the quality of the report, that the graphical presentation makes it easier to grasp the information. And so looking at the, if we do look to the second part of the test, which again, we don't think the district court had to, whether there would be inhibition of competition, it's their burden to show it. And the only thing that they put in on that was this conclusive reassertion that there are other ways of doing it, which I think when you look at the supposed other ways and you look at the way that they have defined the trade dress. Since we have de novo review, if we can think of three or four perfectly usable ways that are not like theirs, does that matter? Should we be allowed to use our own imagination and knowledge of graphing? No, because it's their burden to put in some and if I could address the, there was a reference to the statements by Meritox that this graph was of a limited utility, which Millennium has pointed to as supporting their position. The district court correctly looked at those statements and concluded that even construing the evidence in the light most favorable to the non-moving party, when you look at those statements in context, it's quite clear that what was being said was that the data is of little value. And that's because the data that Millennium uses in plotting the bell curve is different from the data that Meritox uses. Millennium is looking at the entire population of everybody who's been tested. Meritox is looking just at people who are clinically determined to be taking the appropriate amount of medication. Meritox's method of doing that is covered by a utility patent, which has been the subject of separate litigation. But that's not involved in this case. Well, I mean, but I think what it illustrates is the underlying functionality of all of this information and the presentation of this information. And it also explains, I think, that when read fairly, there really isn't a genuine dispute as to what those statements meant. What they meant is Meritox's data is of limited value, not a graph is of limited value. Thank you, counsel. Thank you. Thank you. I'm sorry, Mr. K. Thank you. Just briefly, the clicks billiard case has a very interesting phrase, which in looking at functionality, it says to look to the composite tapestry of visual effects. And when you do that here, looking at the Strickland Declaration, all of the design choices, and you consider that the product here is information, drug tests, numerals, the inescapable conclusion under Qualitex is that there was more than enough evidence to deny summary judgment, and we urge the panel to reverse. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate very interesting arguments and helpful arguments from both counsel. We will adjourn for this morning's session.
judges: Graber, Gould, Daniel